# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4458 | **DATE** | 11/8/2000 |
| **CASE TITLE** | Florists' Transworld Delivery v. Originals Florist & Gifts | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** We grant plaintiff's motion (Doc 3-1) for a preliminary injunction. Defendants are therefore enjoined from using the trademarks, service marks and copyrighted images and designs owned by FTDI. Although we are not ordering defendants to disable their web site altogether, we do require them to cease using any FTDI trademarks, service marks and/or copyrighted images or designs on their web site.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 09 2000 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 12 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 00 NOV -8 PM 1:14 | | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FLORISTS' TRANSWORLD )
DELIVERY, INC., )
 )
        Plaintiff, )
 )
vs. ) 00 C 4458
 )
ORIGINALS FLORIST & )
GIFTS, Inc., et al., )
 )
        Defendants. )

DOCKETED
NOV 0 9 2000

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

INTRODUCTION

This matter comes before the Court on Plaintiff Florists' Transworld Delivery, Inc.'s motion for a preliminary injunction. For the following reasons, we grant the motion.

BACKGROUND

This case arises from a suspended licensing arrangement between Plaintiff Florists' Transworld Delivery, Inc. ("FTDI") and Defendants Originals Florist & Gifts, Inc. ("Originals") and Matthew J. Haupt ("Haupt"). FTDI is a flower-by-wire service that connects nearly 16,000 North American retail florists and participates in an

international floral delivery network of 54,000 affiliated florists in 154 countries. (Compl. ¶ 9.) In the course of conducting business, FTDI has acquired numerous federal trademark registrations for the FTD trademarks and service marks (collectively the "FTD marks").

Originals has been a member of the Florists' Transworld Delivery Association ("FTDA") for several years.[1] Through the FTDA, Originals obtained a license from FTDI to use the FTD marks. Originals signed a written License Agreement ("License Agreement") promising to adhere to usage guidelines and member standards. The License Agreement warned that failure to adhere to the guidelines and standards would result in revocation of the license.

In addition to its marks, FTDI uses several copyrighted designs and images to promote its products. (Tassan Decl. Exhs. 1-10.) Although FTDI has an image licensing program that permits certain entities to reproduce FTDI's copyrighted images, FTDI does not give these privileges to all FTDA members. Instead, one must apply for image licensing separately from membership in the FTDA. An FTDI employee in charge of maintaining the image licensing agreement files found no record of an image license having been granted to Originals. (Hunt Decl. ¶¶ 2-5.)

---

[1] FTDI and FTDA are separate entities. FTDI owns the trademarks, service marks and copyrights at issue in this case. FTDA is a trade association.

Since earlier this year, Originals' account with FTDI has been substantially in arrears. (Wojcik Decl. ¶¶ 3, 4.) On June 7, 2000, FTDI's Director of Credit & Collections contacted Originals and crafted a payment plan. (Id. at ¶ 7.) Under the plan, Originals was to make its first payment by June 9, 2000. (Id.) Originals failed to do so, however. (Id.) In a letter dated that day, Originals pleaded for another extension and promised to pay a set sum by June 24, 2000. (Id.) No payment arrived by June 24, (id.), and on June 26, Originals requested a two-week extension, (id. at ¶ 8).

When no payment had arrived by July 19, 2000, FTDI suspended Originals. (Id. at ¶ 9.) FTDI's Director of Credit & Collections sent written notice of the suspension to Originals. (Wojcik Decl. Exh. 5.) The letter announced that "[Originals'] account has been suspended for non-payment." (Id.) It explained that suspension meant that "[y]ou are not to SEND or RECEIVE any FTD orders," nor "phone or fax any FTD orders," nor "represent yourself as FTD." (Id.) The letter further directed Originals to "remove [FTD's] emblem from your Web site and your front door and any and all advertising." (Id.)

Despite these warnings and the plain language of the License Agreement, Originals has allegedly continued to use the FTD marks. (Hunt Decl. ¶¶ 6, 9, 10; Exh. 2.) On September 13, 2000, an FTDI employee telephoned Originals and was greeted by the following recording: "Thank you for calling Originals' Florist & Gifts, your worldwide FTD florist." (Id. at ¶ 10.)

Furthermore, FTDI claims that Originals has been using FTDI's copyrighted images and designs even though it never possessed an image license agreement. In support of this claim, FTDI has submitted a printout of Originals' web site and compared some of its images to several of FTD's copyrighted images and designs. (Id. at ¶ 9.) A number of FTDI's copyrighted images appear on Originals' web site notwithstanding Originals' alleged lack of an image license from FTDI. (Id. at ¶ 6.)

FTDI filed an action against Originals and its President and Chief Executive Officer Haupt on July 24, 2000, alleging breach of contract and refusal to pay account against Originals and breach of personal guarantee against Haupt. The Complaint also asserts against Originals and Haupt claims of trademark and service mark infringement, unfair competition, cyberpiracy, dilution, deceptive trade practices, common law trademark infringement, tortious interference with business relations, unjust enrichment, copyright infringement, and breach of contract. FTDI seeks injunctive and monetary relief. On October 4, 2000, we entered a default judgment against Originals and Haupt because neither defendant had appeared before us.

Before us today is FTDI's motion for a preliminary injunction. FTDI asks this Court to enjoin Originals and Haupt (collectively "Defendants") from using FTDI's trademarks, service marks and copyrights. As part of this effort, FTDI requests that we order Defendants to disable its web site. The Defendants have not filed any papers challenging FTDI's motion.

## DISCUSSION

When considering a motion for a preliminary injunction, a district court must weigh several factors. The court must determine whether the moving party has demonstrated (1) some likelihood of prevailing on the merits and (2) an inadequate remedy at law and irreparable harm if the injunction does not issue. See Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc., 128 F.3d 1111, 1114 (7th Cir. 1997). In addition, the court must evaluate (3) any irreparable harm the non-moving party may suffer if the injunction is granted weighed against the irreparable harm to the movant if relief is denied and (4) the effect of granting or denying the injunction on nonparties such as the general public. See id. In the case at bar, we find that FTDI has satisfied all four elements.

1. Likelihood Of Prevailing On The Merits

The Seventh Circuit has defined "some likelihood of prevailing on the merits" as requiring the plaintiff to demonstrate a "better than negligible" chance of succeeding on the merits. International Kennel Club v. Mighty Star, Inc., 846 F.2d 1079, 1084 (7th Cir. 1988). In order to prove trademark infringement, the plaintiff must establish (1) the validity of the mark and (2) unauthorized use of the mark that is likely to cause confusion, mistake or deception. See 15 U.S.C. §§ 1114, 1125(a); Echo Travel Inc. v. Travel Assocs. Inc., 870 F.2d 1264, 1266 (7th Cir. 1989). The second element, likelihood of confusion, exists as a matter of law if a licensee continues to use marks

owned by the licensor after termination of the license. See Burger King v. Mason, 710 F.2d 1480, 1492-93 (11th Cir. 1983).

In the instant case, FTDI appears likely to satisfy both elements. First, FTDI professes to be a licensor of valid marks. (Tassan Decl. ¶¶ 3-11; Exhs. 1-9.) Second, Defendants are allegedly continuing to use some of those marks even though FTDI terminated their license. (Hunt Decl. ¶¶ 6, 9, 10; Exh. 2.) By doing so, Defendants are creating the impression that they are FTDI licensees when in fact they are not. Together these allegations comprise a valid claim of trademark infringement and FTDI appears to have a "better than negligible chance" of succeeding on the merits. International Kennel Club, 846 F.2d at 1084.

With respect to FTDI's copyright infringement claim, the prima facie case requires a showing that (1) the plaintiff owned a valid copyright and (2) the defendant copied the protected work. See Wildlife Express Co. v. Carol Wright Sales, Inc., 18 F.3d 502, 507 (7th Cir. 1994). Because direct evidence of copying is rarely available, the plaintiff may establish copying by circumstantial evidence of (1) the defendant's access to the copyrighted work prior to the creation of the defendant's work, and (2) substantial similarity between the copyrighted work and the defendant's work. See Selle v. Gibb, 741 F.2d 896, 901 (7th Cir. 1984).

FTDI appears to be likely establish both elements of a copyright infringement claim. First, FTDI has proffered evidence of its ownership of the copyrights at issue. (Tassan Decl. ¶ 12; Exh. 10.) Second, the evidence suggests that Defendants copied the protected work. FTDI asserts that Defendants, as former licensees of FTD marks, had access to the 1998-2000 Florist Selection Guide which contained the copyrights. In addition, FTDI observes that most of the allegedly copied images appeared on and could have been copied from FTDI's publicly-available web site. Moreover, the images used by Defendants appear to be substantially similar to those copyrighted by FTDI. (Hunt Decl. ¶ 9.)

2. Inadequate Remedy At Law

The Seventh Circuit has recognized that "damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law." Processed Plastic Co. v. Warner Communications, Inc., 675 F.2d 852, 858 (7th Cir. 1982). The Court's readiness to find irreparable injury arises in part from its awareness that victims of trademark infringement are wholly unable to control the nature and quality of the infringer's goods. See id. Similarly, this Circuit will generally presume irreparable harm where copyright infringement has been demonstrated. See Atari, Inc. v. North Am. Philips Consumer Elec. Corp., 672 F.2d 607, 620 (7th Cir. 1982) (superseded by statute on other

procedural grounds). Thus, because FTDI has alleged both trademark and copyright infringement, we can presume an inadequate remedy at law in the instant matter.

3. Balance Of Irreparable Harm To Parties

If the plaintiff demonstrates some likelihood of success on the merits, the court must examine that likelihood with respect to the balance of hardships. See Eldon Indus. v. Rubbermaid, Inc., 735 F. Supp. 786, 814 (N.D. Ill. 1990). The greater the chances that the plaintiff will succeed, the less likely the balance of harms must weigh in plaintiff's favor. See id. Conversely, the less likely plaintiff's chances of succeeding on the merits, the greater the need for the balance of harms to weigh in plaintiff's favor. See id. (citing Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 387 (7th Cir. 1984)).

In the case at bar, we have already concluded that FTDI appears to be likely to succeed on the merits. This conclusion tips the balancing of hardships in FTDI's favor. Furthermore, those hardships that Defendants could potentially suffer appear to be limited to lost profits. Potential lost profits "merit[] little equitable consideration." See Atari, 672 F.2d at 620. Defendants are not of course entitled to profits garnered from misrepresentation of their status as a licensee of FTD or from unauthorized use of the copyrighted images and designs. See id. (stating that "[a]dvantages built upon a deliberately plagiarized make-up do not seem to us to give the borrower any standing

to complain that his vested interests will be disturbed") (quoting My-T Fine Corp. v. Samuels, 69 F.2d 76, 78 (2d Cir. 1934)).

4. Effect On General Public

Last, our inquiry focuses on the effect on the public of granting or denying the injunction. The public has an interest in "preserv[ing] the integrity of the copyright laws which seek to encourage individual effort and creativity by granting valuable enforceable rights." Atari, 672 F.2d at 620; see also Fogerty v. Fantasy, Inc., 510 U.S. 517, 526, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Enforcement of the trademark laws, too, benefits the public. See Ty, Inc. v. West Highland Publ'g, No. 98 C 4091, 1998 WL 698922, at *21 (N.D. Ill. Oct. 5, 1998). Moreover, injunctive relief will put an end to Defendants' alleged deception of consumers. See A.G. Canfield Co. v. Vess Beverages, 796 F.2d 903, 909 (7th Cir. 1986). We therefore conclude that granting FTDI's request for injunctive relief would serve the public interest.

5. Scope Of Relief Sought

We have already established that Defendants cannot continue to use FTDI's marks and images. This means, among other things, that Defendants must cease answering their telephone with a message proclaiming that they are an "FTD worldwide florist." Defendants must also refrain from using any visual images implying they are a licensee of FTDI when in fact they are not.

A more complicated issue arises with respect to Defendants' web site. FTDI claims that Defendants display on their web site several FTDI copyrighted images even though Defendants do not have an imaging license with FTDI. As relief, FTDI asks us to order Defendants to disable the entire web site. FTDI argues that the way in which web sites are indexed by private search engine companies militates for such a result.

According to Fred Johnson, the Chief Information Officer for FTD.COM, web sites are created by a computer language called hyper text markup language ("HTML"). (Johnson Decl. ¶ 2.) The HTML code does not itself appear on the screen; instead, it contains the instructions that generate the text, pictures and links that appears on the screen. (Id.) In addition, the HTML code contains textual information which remains unseen on the web page. (Id.) This textual information is called "metatags." (Id.)

When Internet users wish to explore or "surf" the Web, they normally turn to search engines. Search engines are operated by private companies who each use their own different procedures. (Id. at ¶ 3.) Generally, users may input search terms and the search engine then generates a list of "hits" based upon the inputted information. (Id.)

Contrary to some popular belief, search engines do not actually search the Internet every time a search request is entered. (Id. at ¶ 4.) Such a process would be

unbearably slow. (Id.) Instead, search engines maintain their own indexes. (Id.) The indexes are created when the search engines routinely "crawl" through the Internet and examine the metatags in various web sites. (Id. at ¶ 3.) Thus the search engines do not examine the actual web page for terms; instead, they look to the metatags in the underlying HTML code. (Id.) The engine then indexes the various terms and creates a "pointer" to the particular web site where it found the information. (Id.)

Search engine operators, not web site owners, determine the frequency of these web "crawls." (Id. at ¶ 5.) Hence, search engine indexes can become out-of-date, just as a telephone directory may have old telephone numbers. (Id.)

In its brief, FTDI expresses concern that "potential customers may continue to be directed to [Defendants'] web site[] because various search engines may not be updated to reflect the removal of FTD from the web site[]" and may "result in further lost business by FTDI." FTDI also fears that it will sustain "irreparable damage to its reputation as consumers reaching [Originals'] site will believe that it is FTDI, or licensed by FTDI (when, in fact, it is not)." As a solution, FTDI proposes ordering the shutdown of Defendants' web site.

This proposed remedy strikes us as too extreme. While we understand FTDI's concerns about lost business, we must also consider the potential harm imposed on Defendants by a complete shutdown of its web site. At this juncture, we believe the

better course is to order Defendants to remove from their web site any and all appearances of FTDI's trademarks and service marks as well as any and all copies or replications of FTD copyrighted images or designs. In addition, to quell FTDI's concerns about the search engine indexes, we order Defendants to remove from its metatags any and all references to FTD. These changes will erase the indication that Defendants are FTDI licensees and authorized users of its copyrighted images, yet stop short of foreclosing all opportunities for Defendants to do business over the Internet. We think the balancing of equities embraces this remedy.

## CONCLUSION

For the foregoing reasons, we grant FTDI's motion for a preliminary injunction. Defendants are therefore enjoined from using the trademarks, service marks and copyrighted images and designs owned by FTDI. Although we are not ordering Defendants to disable their web site altogether, we do require them to cease using any FTDI trademarks, service marks and/or copyrighted images or designs on their web site.

_____
Charles P. Kocoras
United States District Judge

Dated: November 8, 2000